UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT CARPENTERS
FRINGE BENEFIT FUNDS,

    Plaintiff,

Case No. 11-14656

v.

Honorable Paul D. Borman
United States District Judge

ANDRUS ACOUSTICAL, INC. and
STERLING MILLWORK, INC. and
ALAN ANDRUS and MARK BOLITHO,

    Defendants.

_____/

OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS COUNT II

This matter is before the Court on Defendants' Motions to Dismiss Count II. The Court held a hearing on February 21, 2012. For the reasons that follow, the Court DENIES Defendants' Motions to Dismiss Count II.

**I.    INTRODUCTION**

The Detroit Carpenters Fringe Benefit Funds ("DCFBF") is a voluntary association consisting of representatives and agents of several funds (the "Funds").[1] The trustees of the Funds

---

[1] The representatives and agents making up the Detroit Carpenters Fringe Benefit Funds are from the Detroit Carpenters Health and Welfare Fund, the Michigan Regional Council of Carpenters Employee Benefits Fund, the Carpenters Pension Trust fund - Detroit Vicinity, the Carpenters Annuity Fund, the Michigan Regional Council of Carpenters Annuity Fund, the Carpenters Vacation and Holiday Trust Fund - Detroit and Vicinity, the Detroit Carpenters Joint Apprenticeship and Training Trust Fund, the Guarantee Fund, and the Industry Advancement Fund (if applicable). Each of the funds is a trust fund established pursuant to the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 141 *et seq.*, and the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*

1

("Plaintiffs"), on behalf of the Funds and the Funds' beneficiaries, brought the present action against Andrus Acoustical, Inc., Sterling Millwork, Inc., Alan Andrus, and Mark Bolitho (collectively, "Defendants").

Andrus Acoustical, Inc., owned by Alan Andrus, is a commercial contractor. Pursuant to a written agreement, Andrus Acoustical, Inc. is bound to the terms of a collective bargaining agreement ("CBA") with the Michigan Regional Council of Carpenters. The CBA requires Andrus Acoustical, Inc. to make specified fringe benefit contributions to the Funds for all covered carpentry work performed by Andrus Acoustical, Inc.

Sterling Millwork, Inc., owed by Mark Bolitho, is a commercial contractor. Sterling Millwork, Inc. is not bound by the CBA.

Plaintiffs allege that Andrus Acoustical, Inc. and Sterling Millwork, Inc. "are one and the same, constituting a single employer, with each being the alter ego of the other." (Compl. ¶ 10) Thus, Plaintiffs contend, Sterling Millwork, Inc. was required, but failed to contribute to the Funds. Plaintiffs contend that Sterling Millwork, Inc. was required to contribute to the Funds for any work that, if done for Andrus Acoustical, Inc., would have been a basis for Andrus Acoustical, Inc. to be required to contribute to the Funds.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or

unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Dismissal is only appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibility" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

3

In addition to the allegations and exhibits of the complaint, a court may consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citations omitted).

### III.   ANALYSIS

#### A.   MBTFA/Alter Ego Doctrine

Counts I and III of the Complaint allege ERISA violations. The matter at issue in this Motion, Count II, alleges a violation of the Michigan Builders Trust Fund Act (MBTFA). The MBTFA provides:

> Sec. 1. In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.
>
> Sec. 2. Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of a felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state

prison at the discretion of the court.

Sec. 3. The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

MCL §§ 570.151-.153.[2]

The CBA requires Andrus Acoustical, Inc. to make specified fringe benefit contributions to the Funds for all covered carpentry work performed by Andrus Acoustical, Inc. Plaintiffs do not allege that Andrus Acoustical, Inc. failed to make such contributions. Nor do Plaintiffs allege that Sterling Millwork, Inc. is a party to the CBA. Instead, Plaintiffs invoke the alter ego doctrine, alleging that Andrus Acoustical, Inc. and Sterling Millwork, Inc. "are one and the same, constituting a single employer, with each being the alter ego of the other." (Compl. ¶ 10) "One business entity is therefore bound by the collective bargaining agreement between another business entity and a union if the two businesses entities are alter egos." *N.L.R.B. v. Crossroads Elec., Inc.*, 178 F.App'x 528, 533 (6th Cir. 2006) (citations omitted). This alter ego doctrine, also referred to as the "double-breasting" doctrine, is applicable in "cases where a company operating with a unionized work force establishes a second, nonunionized company performing the same work in the same market under the same control." *N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 336 n.7 (6th Cir. 1990). The test to determine if two companies are the alter ego of each other is "whether the two enterprises have substantially identical management, business, purpose, operation, equipment,

---

[2] Although the MBTFA is a penal code, the Michigan Supreme Court recognizes a civil action for violation of the MBTFA's provisions. *Astro Bldg. Supplies, Inc. v. Slavik*, 433 B.R. 651, 659 (E.D. Mich. 2010) (citing *DiPonio Const. Co., Inc. v. Rosati Masonry Co., Inc.*, 246 Mich. App. 43, 48 (2001)).

5

customers, supervision and ownership." *Id.* (citing *Nelson Elec. v. N.L.R.B.*, 638 F.2d 965, 968 (6th Cir. 1981)).

Plaintiffs' Complaint alleges that Andrus Acoustical, Inc. and Sterling Millwork, Inc. share management, equipment, facilities, employees, customers, and are both engaged in the commercial carpentry business. (Compl. ¶¶ 4-9) The Complaint also alleges that Alan Andrus, the owner of Andrus Acoustical, Inc., also maintained control of Sterling Millwork, Inc. and that Mark Bolitho, the owner of Sterling Millwork, Inc., also maintained control of Andrus Acoustical, Inc. (Compl. ¶¶ 13-14) Accepting the allegations as true, as the Court must at this stage, Plaintiffs have sufficiently pled the alter ego doctrine, insofar as it supports the claim for relief in Count II.[3]

## B. Specific Project

To prevail on their MBTFA claim, Plaintiffs must prove (1) Defendants are contractors or subcontractors engaged in the building construction industry, (2) Defendants were paid for labor or materials provided on a construction project, (3) Defendants retained or used any part of those funds, (4) for any purpose other than to first pay laborers, subcontractors, and materialmen, (5) who were engaged by Defendant to perform labor or furnish material for the specific project. *DiPonio Const. Co., Inc. v. Rosati Masonry Co., Inc.*, 246 Mich. App. 43, 49 (2001).

Defendants argue that Plaintiffs' Complaint is subject to dismissal because Plaintiffs failed to allege elements (2) through (5). More specifically, Defendants argue Plaintiffs' Complaint is subject to dismissal because the Complaint does not indicate the specific project from which

---

[3] Defendants argue that the alter ego doctrine does not apply because Andrus Acoustical Inc. and Sterling Millwork, Inc. have different ownership, management, offices, fax numbers, and phone numbers. This argument seeks to test the weight of the evidence of Plaintiff's allegations, which is not at issue in a motion to dismiss.

Defendants were paid.

Defendants rely on *Astro Bldg. Supplies, Inc. v. Slavik*, 433 B.R. 651 (E.D. Mich. 2010) for the proposition that Plaintiffs must plead a specific project on which Defendants were paid to establish the trust res. In *Astro*, a contractor had filed a Chapter 7 bankruptcy petition and a supplier brought adversary proceedings seeking to have the money owed to the supplier excepted from discharge on the grounds that a trust was created under the MBTFA. Both the contractor and the supplier moved for summary judgment. The bankruptcy court granted the contractor's motion and denied the supplier's motion. *In re Slavik*, 426 B.R. 711 (E.D. Mich.). The district court affirmed. *Astro Bldg. Supplies, Inc. v. Slavik*, 433 B.R. 651 (E.D. Mich. 2010).[4]

*Astro* is distinguishable from the present case on both legal and factual grounds. The court in *Astro* granted the motion for summary judgment. The district court reasoned that because the supplier "provided no evidence to identify any specific project, the Bankruptcy Court correctly held that [the supplier] failed to establish the existence of a trust, and therefore, failed to establish a prima facie case under the MBTFA." *Astro*, 433 B.R. at 663. Significantly, the district court noted that the supplier did not provide any evidence to identify a specific project. The district court, as is appropriate for a motion for summary judgment, evaluated the evidence. The present case involves a motion to dismiss rather than a motion for summary judgment. Thus, the Court does not evaluate the evidence, but rather determines whether Plaintiffs have offered "sufficient factual allegations that make the asserted claim plausible on its face." *Twombly*, 550 U.S. at 570. Defendants do not cite to, nor can the Court find, any case in which a motion to dismiss was granted for a MBTFA claim

---

[4] The Sixth Circuit subsequently affirmed. *Astro Bldg. Supplies, Inc. v. Slavik*, 2011 WL 6157348 (6th Cir. 2011).

7

on the grounds that the plaintiff did not allege a specific project.

Additionally, the supplier in *Astro* provided the contractor with materials on an ongoing basis as part of an open account, and the contractor paid for the materials on an ongoing basis from money received from its business generally. "An 'open account', 'line of credit', or other open-ended credit arrangement whereby a supplier delivers material to a builder or contractor for use in whatever projects the builder undertakes, and payment is received from the ongoing proceeds generated by the builder or contractor's business, rather than payments from specifically identified projects, does not create a fiduciary obligation between a supplier and builder." *Astro*, 433 B.R. at 663 n.10 (quoting *In re Slavik*, 426 B.R. at 716-18). The present case does not involve an open-ended credit arrangement, thus *Astro* is inapplicable, and a fiduciary obligation may exist.

## IV.  CONCLUSION

Plaintiffs have sufficiently pled the alter ego doctrine, and are not required to plead a specific project on which Defendants were paid to establish the trust res. Accordingly, Defendants' Motions to Dismiss Count II are DENIED.

IT IS SO ORDERED.

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 2-23-12