UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE DETROIT
CARPENTERS FRINGE BENEFIT
FUNDS,                                                          Case No. 11-cv-14656

                Plaintiffs,                          Paul D. Borman
                                                           United States District Judge
v.

ANDRUS ACOUSTICAL, INC.,
a Michigan Corporation, STERLING
MILLWORK, INC., a Michigan
Corporation, ALAN ANDRUS, an
individual, and MARK BOLITHO,
an individual, jointly and severally,

                Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS (ECF NO. 113)

The Trustees of the Detroit Carpenters Fringe Benefit Funds ("the Funds" or Plaintiffs) filed this action against the Defendants for unpaid fringe benefit contributions pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145, on October 21, 2011. The Funds have succeeded, after a long and arduous fight, in establishing that the Defendants operated as alter egos to evade fringe benefits due to the Funds. On November 27, 2017, following a four-day bench

1

trial on liability and a two-day bench trial on damages, this Court entered Judgment in favor of the Funds in the amount of $1,080,543.38. (ECF No. 112.)

The Funds have filed a Motion for Attorneys' Fees and Costs (ECF No. 113) and the Defendants have responded seeking a significant (50%) reduction in the requested fees. (ECF No. 148). The Court has thoroughly reviewed the briefs and supporting materials and concludes that oral argument will not assist in resolution of the motion. The Court therefore will decide the matter on the parties' written submissions pursuant to E.D. Mich. L.R. 7.1(f)(2). *See also Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1400 (6th Cir. 1995) (holding that "the district court's failure to conduct an evidentiary hearing is not reversible error because a fee application may be decided without a hearing"). For the reasons that follow, Plaintiffs' motion is GRANTED IN PART AND DENIED IN PART.

I. **BACKGROUND**

This case involved novel alter ego facts and also involved the intricate unraveling of Defendants' fraudulent double-billing scheme. The background of this litigation is set forth in a number of previous Opinions and Orders of this Court. *See Trustees of Detroit Carpenters Fringe Benefit Funds v. Andrus Acoustical, Inc., et al.*, No. 11-cv-14656, 2018 WL 1980656 (E.D. Mich. April 27, 2018); *Trustees of Detroit*

2

*Carpenters Fringe Benefit Funds v. Andrus Acoustical, Inc., et al.*, No. 11-cv-14656, 2016 WL 1125594 (E.D. Mich. March 22, 2016); *Trustees of Detroit Carpenters Fringe Benefit Funds v. Andrus Acoustical, Inc., et al.*, No. 11-cv-14656, 2014 WL 1746399 (E.D. Mich. April 30, 2014).

The Funds' counsel (Mr. Walter Fisher was lead counsel for the Funds and is the only attorney whose fees are being sought) was required to conduct an extensive investigation into the conduct of the Defendants which included "the review of four years of weekly timesheets, employee files, job cost logs, job payroll logs, each company's payroll, invoices, accounting ledgers, project contracts, project documents, third party project documents, and emails," as well as conducting multiple "meetings with witnesses, depositions of witnesses, and preparing a detailed explanation and presentation of the facts that set forth the intertwined operations of the alter ego." (ECF No. 151, Pls.' Reply 3, PgID 3170.) Plaintiffs' counsel "review[ed] and analy[zed] thousands of pages of time-sheets and accounting documentation." (*Id*.) Many of these documents were introduced during the course of the bench trial and Plaintiffs' counsel's analysis of them and familiarity with their content was critical to the Plaintiffs' case. The Court does not question that a tremendous amount of work was required to piece together the proofs necessary to establish the breadth and depth of the alter ego operation and to present that evidence to the Court in a comprehensive

3

and articulate manner. The level of detail in Plaintiffs' counsel's work was evident at every stage of the litigation.

Yet Defendants raise a fair challenge to the clarity and detail of Plaintiffs' counsel's billing records in some respects and, for the reasons that follow, the Court concludes that a 15% across-the-board reduction in Plaintiffs' fee request is appropriate.

## II. ANALYSIS

An award of attorneys' fees to the Plaintiff Funds in this ERISA case for delinquent fringe benefit contributions is mandatory pursuant to 29 U.S.C. § 1132(g)(2):

> **(g) Attorney's fees and costs; awards in actions involving delinquent contributions**
>
> \*      \*      \*
>
> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
>
> \*      \*      \*
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant . . . .

29 U.S.C. § 1132(g). *See Cleaning Contractors*, 46 F.3d at 1400 ("As this action was brought pursuant to 29 U.S.C. § 1145, an award of reasonable attorneys' fees is

mandated by 29 U.S.C. § 1132(g)(2)(D)."). "However, the award of attorneys' fees must be reasonable as determined under the "lodestar" approach." *Id*. at 1401. "In applying the lodestar approach, '[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Id*. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "There is a 'strong presumption' that this lodestar figure represents a reasonable fee." *Id*. (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, (1986)).

The Funds seek an attorneys' fee award in the amount of $480,130.50.[1] The party seeking fees bears the burden of establishing entitlement to the amount claimed for the work performed based on billing records and rates charged:

> "To justify any award of attorneys' fees, the party seeking compensation bears the burden of documenting its work." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007). The fee applicant "should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the . . . court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

*Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 372 (6th Cir. 2015).

This Court is not required to conduct an "accountant" level audit or engage in

---

[1] The Funds also seek costs in the amount of $8,035.12. Defendants do not challenge the request for costs. The Court finds that the claimed costs are reasonable and will award the full amount requested.

a "line-item review" of Plaintiffs' counsel's billing records. *Howe v. City of Akron*, 705 F. App'x 376, 382-83 (6th Cir. 2017) ("This Circuit has not articulated a clear requirement that when an across-the-board reduction to attorneys' fees is based on multiple factors, the court must specify how much of the reduction is attributable to each factor; nor do we do so today.'") (quoting *Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 604-05 (6th Cir. 2014)). District courts assessing fee requests "must simply [] do rough justice." *Howe*, 705 F. App'x at 382-83 (quoting *The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016)) (alteration in original). "This means that the court can rely on estimates based on its 'overall sense of a suit.'" *Husted*, 831 F.3d at 703 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). "[B]ecause the district court has a superior understanding of the litigation, [reviewing courts] afford 'substantial deference' to its factual determinations.'" *Id.* (quoting *Hensley*, 461 U.S. at 437) (alteration added).

Having presided over this case for six years, ruled on motions to dismiss and for summary judgment that presented difficult and novel legal issues and ultimately conducting a four-day liability bench trial and a two-day damages bench trial, this Court feels well situated to assess the effort that was required on Plaintiffs' counsel's part to "look behind the curtain" to divine from the voluminous evidence exactly how this alter ego scheme operated and how it resulted in specific harm to the Funds. The

Court draws on this "overall sense of [the] suit" in reaching its conclusions. *Husted*, 831 F.3d at 703.[2]

Plaintiffs' counsel Walter Fisher has submitted just over 100 pages of daily billing records covering the entirety of his time spent on this six-year litigation, beginning on August 8, 2011 and ending with his last entry on October 19, 2017.[3] (Pls.' Mot. Ex. A, Nov. 30, 2017 Affidavit of Walter B. Fisher, Ex. 2, Billing Records.) Mr. Fisher also submitted his own Affidavit detailing his qualifications and experience as counsel for the Funds for over 23 years. (Fisher Aff. ¶¶ 4-7, Ex. 1, Curriculum Vitae of Walter B. Fisher.) Mr. Fisher billed all of his time in this case at an hourly rate of $185.00, which was well below the median rate ($269/$253) for

---

[2] In support of their Response, Defendants submit a lengthy Declaration of Attorney Thomas G. Kienbaum, who opines on the reasonableness of Plaintiffs' counsel's fee request. The Court appreciates the effort Mr. Kienbaum expended in reviewing some of the filings in this case and offering his opinion as to Mr. Fisher's billing practices. But, as Mr. Kienbaum notes in his Declaration, "[t]he Court will of course know better than [he] what the case called for." (ECF No. 148-2, December 28, 2017 Declaration of Thomas G. Kienbaum ¶ 34.) The Court has reviewed the Kienbaum Declaration and considered the argument and authority it presents, but in the end gives Mr. Kienbaum's conclusion as to the appropriate reduction minimal weight – as Mr. Kienbaum acknowledges, he lacks any relevant "sense of [this] suit" and his opinions are of limited value.

[3] Plaintiffs' counsel could have, but apparently did not, include fees for the time he spent preparing his fee request. *See Auto Alliance Int'l v. United States Customs Service*, 155 F. App'x 226, 229 (6th Cir. 2005) (observing that "[t]he district court properly recognized that the recovery of for time spent preparing a party's request for attorney's fees is legitimate").

an attorney of his years of experience during relevant time period. *See, e.g.,* 2014 and 2017 Economics of Law Practice in Michigan, Attorney Income and Billing Rate Summary Report. *See*https://www.michbar.org/file/pmrc/articles/0000151.pdf; https://www.michbar.org/file/pmrc/articles/0000153.pdf.

Unsurprisingly, Defendants do not object to Mr. Fisher's hourly rate, which Defendants agree is reasonable based on Mr. Fisher's year's of experience and specialized knowledge. Defendants do object, however, to the requested amount of attorneys' fees claimed by Mr. Fisher, and seek a 50% reduction in that amount. Defendants mount three principal challenges to the fee request: (1) the fee was excessive in light of the degree of success obtained; (2) the sheer number of hours billed (2,595) was excessive given counsel's experience and the nature of the issues in the case; and (3) the billing records contain prohibited "block billing" or "vague" entries, that provide the Court with insufficient information on which to base a finding of reasonableness. The Court will address the last objection first.

"The key requirement for an award of attorney fees is that '[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the action.'" *Imwalle v. Reliance Medical Products, Inc*., 515 F.3d 531, 553 (6th Cir. 2008). Vague

8

descriptors and string-cite blocks of tasks have been found in certain instances to be "insufficient billing descriptions." *Id.* While the Sixth Circuit has not prohibited block billing, it has recognized that this manner of billing will justify a fee reduction in certain instances. "[B]lock billing is not per se prohibited. . . . But, if counsel's block billing relies on inadequate descriptions for the work performed, the district court may reduce the award accordingly." *Howe*, 705 F. App'x at 383 (internal quotation marks and citations omitted). In *AutoZone*, the Sixth Circuit upheld the district court's fee reduction where the billings included "more than a dozen time entries with the bald description "Prepare and Draft Appellee Brief," concluding that with such vague descriptions "it is difficult to ascertain whether counsel's time was reasonably expended without a more detailed description of the work that was done." *AutoZone*, 624 F. App'x at 373. And in *Howe*, a fee reduction was upheld where there was evidence of "many entries list[ing] a string of activities using only the most general of descriptors . . . leaving the [c]ourt to guess as to the nature of each task." *Howe*, 705 F. App'x at 383 (internal quotation marks and citation omitted) (alterations in original). But the Sixth Circuit also instructs that "explicitly detailed descriptions are not required," and billing entries must be "read in the context of the billing statement as a whole and in conjunction with the timeline of the litigation . . . ." *Imwalle*, 515 F.3d at 554.

9

Plaintiffs' counsel's billing records do reflect some instances of both "vague descriptions" and "string-cite block" billing. For example, there are a number of one-line entries for work that in some instances consumed the entirety of an eight or ten hour day or for multiple entries that contain a series of tasks, some of which do not appear on their face to fully justify the time claimed. In addition, although the legal issues were novel, and the facts complex, the number of hours dedicated to "briefing" is extensive and often tersely explained. For example, when preparing the Plaintiffs' motion for partial summary judgment, Plaintiffs' counsel logged the following entries (among others):

| Date/Attorney | Description | Hours |
|---|---|---|
| 3/05/2013/WBF: | Work on brief facts. | 8.00 |
| 3/06/2013/WBF: | Continue working on facts for summary judgment motion. | 8.00 |
| 3/07/2013/WBF: | Continue working on facts for summary Judgment motion. | 8.00 |
| 3/08/2013/WBF: | Continue working on facts for summary Judgment motion. | 8.00 |
| 3/18/2013/WBF: | Work on brief. | 8.00 |
| 3/19/2013/WBF: | Work on brief. | 9.00 |
| 3/20/2013/WBF: | Work on brief. | 8.00 |

(ECF No. 113, Ex. A, Ex. 2, PgID 2852-54.) By the Court's rough calculation, Plaintiffs' counsel spent a total of approximately 120 hours preparing Plaintiffs' motion for partial summary judgment. Although not all entries were equally vague, and importantly the entries *do* match the timeline of the litigation, as the Sixth Circuit

observed in *AutoZone*, such "bald descriptions" make it "difficult to ascertain whether counsel's time was reasonably expended without a more detailed description of the work that was done." 624 F. App'x at 373. Similar entries also appear in Plaintiffs' counsel's billing entries for preparing his briefs in response to Defendants' motions for summary judgment (consuming approximately 100 hours of time) and for preparing his reply in support of Plaintiffs' motion for partial summary judgment (consuming approximately 40 hours of time). (ECF No. 113, Ex. A, Ex. 2, PgID 2855-57, 2858.) While Plaintiffs' briefs were always thorough and well organized, and the Court does not doubt the sincerity of counsel's effort, it is the combination of the total number of hours devoted to these tasks coupled with the sometimes vague descriptions that makes it difficult for the Court to conclude with certainty that the time was reasonably spent. It is easier to assess and perhaps accept a vague descriptor such as "work on trial brief," where the time logged is some smaller increment and not quite so "round," for example "9/05/2014/WBF: Work on trial brief. 1.70." (*Id.* PgID 2868.) But multiple blocks of 8 or 9 "round" hours with such a vague descriptor leaves too much uncertainty as to whether the task was performed with reasonable diligence and efficiency.

These are just some examples of the type of "vague" billing that the Court concludes justifies a modest reduction of 15% in this case. Similar entries appear in

counsel's records related to work on the trial brief, which indicate 15 or 16 days on which an entire 8 or 9 hours was accounted for as "work on findings of fact," or "work on trial brief, findings of fact, and conclusions of law." (*Id*. PgID 2878-80.) Similarly, entries related to counsel's work on post-trial findings of fact and conclusions of law reveal 7 or 8 days on which an entire 8 or 9 or 10 hour day was devoted to simply "work on post trial findings of fact and conclusions of law." (*Id*. PgID 2884.) Again, the Court appreciates the detail in Plaintiffs' post trial findings, which painstakingly set forth the relevant trial testimony or admitted exhibit that supported each individual proposed finding of fact. It is simply too difficult, however, to conclude from the terse descriptor that the time billed was always reasonably spent. Certainly it would be unacceptable to have a single entry billing 100 hours for "work on summary judgment brief," expecting the Court to just take counsel's word for it. Breaking that 100 hours down into multiple terse and vague entries does not significantly improve the clarity of the nature of the work performed. Similar entries appear in Plaintiffs' counsel's billings in the damages phase, where the entry "work on damages review" or "work on findings of fact" or "work on reply facts and conclusions" appears on multiple days for block totals of 5-9 hours each day. (*Id*. PgID 2889-92, 2916, 2918.)

These types of entries appear with limited frequency and support a modest reduction in the requested fee. Less frequent but also present in Plaintiffs' counsel's records are instances of string-cite block billing, marked by entries citing a string of numerous tasks, which may or may not be individually descriptive, accounted for by a single block of a significant amount of time. For example:

    8/08/2016/WBF    Continue work on damages; Telephone conference with T. Farmer regarding audit status and review of same with Court; Telephone conference with S. Wright's office regarding same; attempt to contact Court and leave message; telephone conference with auditors regarding audit issue regarding double time for one employee; receipt and review of notice from Court regarding new date for status conference; notes to file and calendar regarding same; receipt and review of phone message from S. Wright's office regarding conflict with new date; telephone conference with all attorneys regarding possible dates for status conference; drafting and preparation of correspondence to court case manager regarding same; notes to file.    **7.00**

(ECF No. 113, Ex. A, Ex. 2, PgID 2896.) The Court is left to speculate as to the length of the telephone conferences or the attempts to contact the Court or the drafting of correspondence and making notes to the file, and then must square that with the 7 of hours time spent on these tasks. Assessing reasonableness in such an instance is difficult.

"Courts in this circuit have reduced attorney fees on the basis of insufficient

13

billing descriptions where . . . billing records lumped together time entries under one total so that it was impossible to determine the amount of time spent on each task." *Schleben v. Carpenters Pension Trust Fund-Detroit and Vicinity*, No. 14-cv-11564, 2016 WL 806707, at *10 (E.D. Mich. March 2, 2016) (internal quotation marks and citation omitted) (applying a 20% across-the-board reduction to requested fee award based on block billing format, among other reasons). Such instances of "block" billing, not all of which are objectionable, also support the Court's decision to apply a modest across-the-board reduction in Plaintiffs' counsel's fee request.

Defendants also challenge the requested fee award based upon their view of the "success" achieved by the Plaintiffs. Plaintiffs set out to establish a case of alter ego liability and they succeeded in making their case. While it is true that the Plaintiffs initially sought to encompass a larger alter ego entity than the Court ultimately allowed, the same core of operative facts, i.e. the fraudulent double-billing scheme and the accounting forensics required to expose it, was necessary to sustain either theory. "When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorneys fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Imwalle*, 515 F.3d at 554. The Plaintiffs rightly claim a full measure of success and the Court finds no justification to reduce counsel's fees on the basis of Defendants'

claim of "limited success."

Finally, Defendants challenge the sheer number of hours that Plaintiffs' counsel expended on the case, comparing that number of hours to the much less significant amount of time expended by one of the Defendant's counsel. There is no comparison to be made between the amount of effort required in this case to unearth, prove, and explain the alter ego operation between these Defendants and the amount of effort required to defend against the charge. Defendants throughout largely reiterated their view of the legal "misfit" between what they characterized as traditional alter ego liability and the fraudulent double billing alter ego operation that was undeniably at play here. Comparing Mr. Farmer's hours to Mr. Fisher's hours in this case is unhelpful, at a minimum. The Court's 15% across-the-board reduction sufficiently takes into account the significant number of hours devoted by Plaintiffs' counsel to particular tasks that in some instances were insufficiently supported by detail in his billing records.

Defendants also are critical of Plaintiffs' alleged refusal to discuss settlement based on the Fund auditor's $250,000 unpaid fringe benefit figure that was revealed at the summary judgment stage. But of course that figure did not include the *mandatory* prejudgment interest applied to the final unpaid contribution figure of $280,928.50, which resulted in an ultimate judgment in the amount of $1,080,543.38.

15

According to Mr. Fisher's Affidavit submitted in support of Plaintiffs' Reply brief, Defendants offered $60,000.00 to settle the case *only after* they lost the liability phase and then suggested they may go as high as $100,000 sometime shortly before the commencement of the damages trial. (ECF No. 151, Ex. A, Jan. 4, 2018 Affidavit of Walter B. Fisher, Jr.) At that point, given the Court's ruling on liability and the mandatory nature of the provisions of § 1132(g), Defendants could easily have done the math and appreciated that $100,000 was not going to settle a case with a high likelihood of resulting in a million dollar judgment. Indeed, this was equally obvious at the summary judgment stage based on the Funds' auditors $250,000 figure.

## III. CONCLUSION

The Sixth Circuit has instructed that this Court is not required to conduct a line-by-line review of billing records or support its reduction with specific references to particular billing inadequacies. It is enough if the Court, as it has done here based on its "overall sense of [the] suit," engages in a thoughtful and thorough review of the entirety of the challenged billing records and strives to approximate "rough justice." The Court rejects Defendants' request for a 50% reduction but finds that an across-the-board reduction of 15% is appropriate in this case.

Accordingly, Plaintiffs' Motion for Attorneys' Fees is GRANTED IN PART AND DENIED IN PART. The Court awards Plaintiffs attorneys' fees in the amount

of $408,110.93. The Court also awards costs in the amount of $8,035.12.

IT IS SO ORDERED.


                                                                  s/Paul D. Borman  
                                                                  PAUL D. BORMAN  
                                                                  UNITED STATES DISTRICT JUDGE

Dated: July 23, 2018

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 23, 2018.


                                                                  s/Deborah Tofil  
                                                                 Case Manager